## O'Neill, Trustee, v. Finnesey.

*Fox & Rothschild,* for plaintiff; *Lewis, Adler & Laws,* for defendant.

ALESSANDRONI, J., June 20, 1929.—Harry J. J. O'Neill, trustee in bankruptcy for the estate of Finnesey and Kobler, Inc., brought this bill in equity, alleging that the defendant, the controlling stockholder of the corporation until April, 1925, had improperly withdrawn moneys from the corporation and purchased certain real property with it. The bill prayed that the defendant be restrained from disposing of or encumbering the said real property and be ordered to convey them to the plaintiff, on the basis that he be declared the holder of the property in question as trustee for the plaintiff. After the trial, the presiding judge filed an adjudication stating his findings of fact and conclusions of law. The testimony showed that the defendant owned 998 shares of the 1000 shares of the capital stock of the corporation, one share was held by the defendant's wife and the remaining share by William Sokalov, who acted

as secretary, treasurer and director of the corporation and who also kept the books. It thus appears that this was a one man corporation. The defendant remained in active control of the corporation from 1916 to 1922, when he gave Sokalov ninety-nine more shares. In April, 1925, on being told that the corporation was in financial difficulty, he gave $50,000 to the corporation. The money alleged to be wrongfully withdrawn was taken from the corporation on numerous occasions with the full knowledge and consent of Sokalov. It was understood that Finnesey was really the corporation, and withdrawals were made without any formal resolution at any time. Part of the money withdrawn was used in partial payment of the properties purchased, the balance being paid from Finnesey's personal sources of capital. The money so withdrawn was charged to several special accounts and to expense accounts, although no intentional deception or fraudulent concealment was proven. The withdrawals all appeared in the books and were apparent to any book-keeper. After 1921 no regular books were kept, and there was no evidence of any wrongful withdrawals between 1922 and 1925, when the defendant withdrew from the corporation. Evidence of withdrawals by the defendant, subsequent to 1921, were not explained, and it cannot be determined whether they were wrongful. Up until 1921 the profits had always exceeded the expenses of the business, plus the withdrawals of the defendant, but in 1921 a loss of $8800 was shown. However, in the preceding five years, approximately $23,000 in net profits had been earned and not withdrawn. There was no evidence of the impairment of capital or that the corporation was insolvent at any time during which the withdrawals in question were made. The findings of fact of the chancellor were substantially to this effect, and the exceptions by the plaintiff are without foundation.

The gist of the plaintiff's exceptions to the chancellor's conclusions of law rests really on the basis that the withdrawals impaired the capital of the corporation and precipitated the insolvency of the company at the time of the withdrawals. All of plaintiff's cases are to the effect that dividends cannot be paid out of capital. But no evidence was produced to prove an impairment of capital or the insolvency of the company. The plaintiff's contentions that the withdrawals were not made from profits, and that they reduced this corporation to insolvency (so that the stockholders might be held accountable to subsequent creditors), are not upheld by the proofs. The evidence shows that, except for the year 1921, there was more than enough profit to cover all withdrawals, and, consequently, there could be no impairment of capital, and if there was no impairment of capital, insolvency could not be produced so as to give subsequent creditors a right of action. The mere fact that the money withdrawn was not paid out in formally declared dividends has no bearing and is admitted by the plaintiff.

The informality of the distribution of profits is immaterial if they were dividends in fact, and this being a one man corporation, there can be no question that such was the intention of the defendant and that it was acquiesced in by the two dummy directors.

The evidence shows that all the creditors existing at the time the defendant withdrew from the corporation and assigned his stock to Sokalov and his son and son-in-law have been paid, and that the only creditors of the bankrupt corporation are subsequent creditors. An attempt was made to show that income tax returns had been falsified and that the United States Government was also a creditor, but no evidence was introduced to prove that the United States was making any claim. Inasmuch as the withdrawals were lawful and no attempt was made to defraud any one, the adjudication of the chancellor in

favor of the defendant must be upheld. The law is indicated in Illoway *v.* Daly, 65 Pa. Superior Ct. 333 (1916): "There can be no serious question concerning the receiver's right to recover the value of the property transferred by the company if creditors existed at the time the transfer was made, or if it appeared that the property was transferred with the knowledge, either express or implied, that the company, through its then known business dealings, would become insolvent, or where stockholders would be prejudiced by such transfer. To sustain the receivers' right to recover, it must appear that some right at law, known to exist at the time the bargain was made, was injuriously prejudiced by the purchase of the stock and the transfer of the property by this company. . . . Stockholders dealing in good faith without fraudulent motives need not offer corporate property at public sale to effect a distribution of a part or all of it among themselves, and where part is retained by the corporation and the business is still conducted in the absence of fraudulent motives, future creditors cannot complain."

There being no evidence that the withdrawal of these dividends by the, defendant was wrongful or impaired the capital of the corporation, the exceptions filed by the plaintiff to the chancellor's findings of fact and conclusions of law cannot be sustained. After 1921 the defendant was not even actively engaged in the business of the corporation, and when informed that the corporation was in bad shape in 1925, he contributed $50,000, so that when he withdrew from the corporation, its assets exceeded its liabilities by about $27,000. The oral argument and brief of the plaintiff have failed to convince us that the chancellor's findings of fact, conclusions of law and decree should be disturbed.

The following exceptions of the plaintiff to the findings of fact and conclusions of law are dismissed: 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21.